IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM BOYD PIERCE, | § | |
| TDCJ #1208957, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-3062 |
| | § | |
| NATHANIEL QUARTERMAN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate William Boyd Pierce (TDCJ #1208957, former TDC #473279, TDC #411855, FCI #18427-149) filed a *pro se* complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the medical and dental care that he has received while in prison. Pierce has filed a memorandum in support of his complaint, along with several administrative grievances concerning the level of his care. At the Court's request, he has also provided a more definite statement of his claims. (Doc. # 7). The defendants have filed a motion for summary judgment. (Doc. # 16). Pierce has filed a cross-motion for summary judgment in response. (Doc. # 17). After reviewing all of the pleadings, the summary judgment record, and the applicable law, the Court grants the defendants' motion and dismisses this case for reasons that follow.

## I.    BACKGROUND

Pierce is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ") at the Ellis Unit in Huntsville.

Pierce sues four health care workers employed by the University of Texas Medical Branch ("UTMB") to provide treatment for TDCJ inmates, including two dentists (Dr. Stephen Box and Dr. Ila Brown) and two medical providers (Dr. Betty Williams and Nurse Practitioner Brenda Hough). Pierce's complaint primarily concerns the level of medical and dental care that he has received at the Ellis Unit.[1]

Pierce is a sixty-seven-year-old man who has been in and out of prison since "around 1970."[2] Pierce reportedly has only five teeth. Pierce has a "partial plate" or denture in the upper portion of his mouth, which is secured in place by some of his remaining teeth. Pierce complains, however, that he has difficulty eating and chewing his food properly because he does not have a lower partial plate. Pierce was apparently given a lower partial plate while in TDCJ previously, sometime before 2001, but it was lost at some undisclosed time. Pierce claims that he requested a new lower partial plate in 2004, but that his request was denied by Dr. Box and Dr. Brown. Pierce claims that these defendants have also denied his request to pull his remaining teeth and to fit him with a full set of dentures. Pierce complains, therefore, that he has been denied adequate care in the form of a lower partial plate or, in the alternative, a full set of dentures.

---

[1]    Pierce also sues TDCJ Director Nathaniel Quarterman, Warden Alfred Janicek, Jr., Assistant Warden Gary Wakefield, Captain Michael Burnett, Major S.M. Johnson, and Lieutenant Powell. After screening the complaint pursuant to 28 U.S.C. § 1915A, the Court did not request an answer from these defendants because Pierce fails to state a claim upon which relief can be granted against these supervisory officials for reasons discussed briefly below.

[2]    Pierce discloses that he was incarcerated in TDCJ from 1985 through January 1986, and again in February 1988 through October of 2001. Pierce returned to TDCJ most recently in 2003.

2

In addition, Pierce complains that he has a painful growth or "bone spur" on the back of his left heel, which makes it painful for him to walk. Pierce complains that he has been denied an examination by a "foot specialist" or podiatrist at the John Sealy Hospital run by UTMB in Galveston. Pierce blames Dr. Williams and Hough for denying him access to medical care for his foot.

In his pending civil rights complaint under 42 U.S.C. § 1983, Pierce claims that the defendants have denied him adequate medical care in violation of the Eighth Amendment. Pierce does not seek monetary relief. He seeks only injunctive relief. The defendants have moved for summary judgment, arguing that Pierce is not entitled to the relief that he seeks. Pierce has filed a cross-motion for summary judgment in response. The parties' contentions are discussed further below under the governing standard of review.

## II.   STANDARD OF REVIEW

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances. Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or

malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

In this case, the defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law, and the plaintiff has filed a cross-motion for summary judgment in response. Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

(en banc).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action.  *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party.  *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist.  *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings.  *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence.").  Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts.  *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).  Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his

burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III.   DISCUSSION

### A.   Qualified Immunity

The defendants argue that Pierce cannot demonstrate a constitutional violation of the Eighth Amendment and that, even assuming that a violation occurred, they are entitled to qualified immunity from his Eighth Amendment claims against them. Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions." *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir. 2001)). "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, the Court must conduct a bifurcated analysis. *See, e.g., Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004). The threshold question has two parts. The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right. *Scott v. Harris*, — U.S. —, —, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If, and only if, the court finds a violation of a constitutional right, 'the next,

sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201). If the defendants' actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537 (citations omitted).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Id*. The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with the defendants' contention that the plaintiff's Eighth Amendment claim lacks merit. Accordingly, the Court first addresses whether Pierce has raised a genuine issue of material fact about whether the defendants committed a constitutional violation under the Eighth Amendment standard that governs the level of medical care in the prison context.

### 1.      Eighth Amendment – Medical Care

7

To prevail under 42 U.S.C. § 1983, Pierce must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter*, 467 F.3d at 463 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).[3]

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for

---

[3]     To the extent that Pierce's complaint implicates the adequacy of the dental care afforded at the Ellis Unit, the Fifth Circuit has recognized that the failure to provide dentures to a prisoner could, under certain circumstances, constitute deliberate indifference to a serious medical need in violation of the Eighth Amendment. *See Vasquez v. Dretke*, 226 Fed. App'x 338, 2007 WL 756455 (5th Cir. March 9, 2007) (unreported) (citing *Farrow v. West*, 320 F.3d 1235, 1244-45 (11th Cir. 2003); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001); *Hunt v. Dental Dep't*, 854 F.2d 198, 201 (9th Cir. 1989)). Pierce fails to raise a genuine issue of material fact showing that those circumstances are present here and, for reasons discussed more fully below, he does not otherwise show that he has been denied dentures with deliberate indifference.

harm existed.  *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).  The

Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one

to meet.  *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A

prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a

substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take

reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)

(quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or

medical malpractice do not constitute deliberate indifference, nor does a prisoner's

disagreement with his medical treatment, absent exceptional circumstances." *Id.* (citations

omitted).  A showing of deliberate indifference requires the prisoner to submit evidence that

prison officials "'refused to treat him, ignored his complaints, intentionally treated him

incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard

for any serious medical needs.'" *Id.* (citations omitted).  Pierce's complaints and the

treatment that he as received are summarized below, beginning with his claim that he was

denied access to a specialist to examine the bone spur on his left heel.

### a.        Pierce's Bone Spur

Pierce complains that Dr. Betty Williams and Brenda Hough denied him medical care

by a foot specialist or podiatrist for the bone spur on his left heel.  In response to this claim,

the defendants present relevant portions of Pierce's medical records and an affidavit from Dr.

Bobby Vincent, who is employed by UTMB's Correctional Managed Care division as the

Huntsville District Medical Director.   (Doc. # 16, Exhibits A & C).

Based on his review of the medical records, Dr. Vincent notes that Pierce requested an examination by a physician on May 16, 2007, complaining that a "bone" was growing out of the back of his heel and was causing pain. Pierce was seen by Hough in the clinic the following day, on May 17, 2007. Hough noted a "probable callous formation" on the back of the heel and ordered an x-ray, among other tests.[4] The x-ray revealed some ossification or calcification along with a "small calcaneal spur" on the heel, but no further abnormalities.

On June 18, 2007, Pierce submitted a sick call request, asking to see Dr. Williams. On that same day, Pierce submitted a step 1 grievance, complaining that nothing had been done for his foot and asking to see a foot specialist. Subsequently, Pierce failed to show up for a scheduled appointment on June 26, 2007. On July 6, 2007, Pierce was seen by a physicians assistant, where he requested a referral to the TDCJ "brace and limb clinic" so that he could be evaluated for a pair of soft shoes or medical boots. The referral was approved and Pierce was scheduled for an evaluation at the brace and limb clinic in January of 2008. Prior to that scheduled appointment, Dr. Williams examined Pierce on September 13, 2007, to address his complaint of numbness on the top of his foot. She determined that the numbness was caused by nerve compression because Pierce was lacing his shoes too tightly.

Dr. Vincent reports that, according to the x-ray taken of Pierce's left heel, his calcaneal spur was "not something that would be expected to cause concern." The

---

[4]     Medical records show that Pierce had a history of callus formations on both his right and left heels and that he had complained previously of foot pain in December of 2004. (Doc. # 16, Exhibit A).

radiologist noted that it was small and observed no further abnormalities, other than some
calcification at the distal insertion of the Achilles tendon, which could indicate tendinitis in
the area.  According to Dr. Vincent, "[c]alcaneal spurs like the one described usually do not
require any further treatment."  Dr. Vincent notes that Pierce was seen at the brace and limb
clinic on March 27, 2008, where "appropriate orthotics" were ordered to accommodate the
abnormality present on his left heel.  In Dr. Vincent's opinion, Pierce's bone spur was treated
appropriately and his allegations of inadequate medical care for failing to refer him to a foot
specialist are "unfounded."

          **b.**       **Pierce's Request for a Lower Partial Plate or Dentures**

Pierce complains that he has been denied a lower partial plate or a full set of dentures,
noting that he has great difficulty chewing his food.  In response to these allegations, the
defendants have provided Pierce's relevant dental records, the TDCJ Dental Policy, and the
affidavit from Dr. Vincent.  (Doc. # 16, Exhibits B, C, & D).

The records provided by the defendants show that, since his return to TDCJ in 2003,
Pierce has received extensive dental care at the Ellis Unit.  Pierce submitted a sick call
request on July 28, 2004, to get a tooth pulled.  Pierce refused the appointment that was
scheduled for the next day.  On August 12, 2004, Pierce submitted another request,
complaining of tooth pain.  Dr. Brown determined that the tooth needed to be extracted due
to severe periodontal disease.  In 2004, Pierce requested a lower partial plate, explaining that
he had one made in 2001, but that it was lost.  Pierce's request for a partial plate was refused
pursuant to the TDCJ Dental Policy that went into effect in March 2003 because he was

ineligible.  Pierce was told that he was ineligible because he did not have a "documented medical need" and an acceptable level of oral hygiene.

Dr. Vincent explains that, under the current TDCJ Dental Policy, "prosthodontics" or dentures are provided when "the health of the patient would be otherwise adversely affected."  This includes an evaluation of the patient's nutritional status as measured by his "Body Mass Index" or BMI, which is based on an individual's height and weight.  A BMI of 18.5 to 25 indicates that a patient's weight is "normal" for his height.  Dr. Vincent notes that patients having a BMI of 25 or lower that is "trending downward," or a patient who is ten percent or more underweight relative to his ideal body weight, should be referred to a physician to determine whether he is eligible for dentures under the TDCJ Dental Policy.  According to Dr. Vincent, Pierce has never had a BMI of 25 or less which would qualify him for a referral for dental prosthesis.

The medical and dental records support Dr. Vincent's assessment that Pierce has consistently failed to meet the weight loss criteria.  Pierce filed the complaint in this case on September 19, 2007.  Pierce, who stands 70 inches in height (approximately 5 foot 10 inches) weighed 185 pounds at a medical examination on September 13, 2007.  (Doc. # 16, Exhibits A & B).  Using a "Body Mass Index calculator," Pierce's BMI at this weight was 26.5, meaning that he qualified as "overweight."  United States Dep't of Health and Human Services, Centers for Disease Control and Prevention, www.cdc.gov (last visited August 13,

2008).  Although Pierce's weight has fluctuated since his most recent return to TDCJ in 2003, the medical records reflect that he has never attained a BMI of 25 or below.[5]

Dr. Vincent notes that Pierce has an upper partial denture, which is held in place by his remaining teeth.   Pierce's medical records reflect that he has been seen by the dental department for his complaints of pain and to assess the need for repairs to his existing partial plate.  For example, Dr. Brown extracted one of Pierce's upper teeth (tooth #12) on July 26, 2006.  On September 8, 2006, Dr. Brown noted that upper left teeth needed to be added to Pierce's partial denture.  On October 3, 2006 an impression was made for the prosthetic repair.  On November 30, 2006, Pierce refused his appointment to have an additional tooth added to his partial plate, stating that he did not want to "wait around all day[.]"  Dr. Vincent observed that Pierce has been given Tylenol to treat his complaints of discomfort and medication (Zantac) to treat indigestion.  Pierce was also advised that, if he was having trouble chewing his food, he could request a blended diet.  Dr. Vincent reports that, although there is no "soft" diet, softer food items are available for offenders to choose from if they have a medical or dental problem that requires such an accommodation.  As the defendants note, Pierce has not made any request for a blended diet.

---

[5]      The records show that Pierce weighed 180 pounds at an examination on May 17, 2007.  On March 29, 2007, Pierce weighed 190 pounds.  On February 10, 2007, Pierce weighed 195 pounds.  On November 29, 2006, Pierce weighed 191 pounds.  On June 30, 2006, Pierce weighed 196 pounds.  On June 1, 2006, Pierce weighed 204 pounds.  On December 13, 2005, Pierce weighed 214 pounds.  On July 1, 2005, Pierce weighed 214 pounds.  On February 12, 2004, Pierce weighed 207 pounds.  On April 7, 2004, Pierce weighed 204 pounds.  On December 5, 2004, Pierce weighed 222 pounds.  Thus, the records show that Pierce has maintained a BMI well in excess of 25 and that he has been overweight during the entire time period relevant to his complaint.

Based on the medical and dental records, which show that Pierce has received extensive care, Dr. Vincent concludes that Pierce has not shown that he meets the criteria for a lower partial plate or a full set of dentures under the existing TDCJ Dental Policy.  In particular, Dr. Vincent notes that Pierce has not exhibited proper oral hygiene and he does not have a BMI of less than 25 or a significant weight loss below his ideal weight that would justify an additional plate.  Because Pierce does not have any "overriding medical problems that would indicate that there was a need for a lower denture," Dr. Vincent contends that the Ellis Unit dental staff have provided "more than adequate" care.

### c.    Pierce Fails to Show Deliberate Indifference

Pierce concedes that he was provided with care for his bone spur, including a referral for special shoes or "orthotics," but complains that he was denied an examination by a foot specialist and possibly surgery to remove the bone spur.  In addition, Pierce does not dispute that he has been evaluated by a dentist following his request for a lower partial plate, and that his condition has been monitored, but that he has not met the weight loss criteria for dentures under the TDCJ Dental Policy.

To the extent that Pierce disagrees with the level of care that he received, the Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment.  *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977).  Even if a lapse in professional judgment occurred, any

14

such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

Pierce does not allege or show that he was refused care or that the defendants intentionally treated him incorrectly with wanton disregard for his medical condition. *See Domino,* 239 F.3d at 756. Under the circumstances of this case, Pierce's allegations concerning the level of care that he received are not sufficient to establish negligence or to show he was treated with deliberate indifference and do not state a violation of the Eighth Amendment. *See McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) (finding no Eighth Amendment violation where "there appears extensive records documenting assessment and treatment of [the plaintiff's] medical complaints by medical practitioners"). Pierce has failed to raise a genuine issue of material fact on this issue and, consequently, he has not established a constitutional violation in connection with his care. Accordingly, the defendants are entitled to summary judgment on this issue.

### 2. Objective Reasonableness

Because Pierce has failed to establish a constitutional violation, the Court need not proceed to the final step of the qualified immunity analysis. *See Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007). Nevertheless, the defendants argue that, even if a violation occurred, they are entitled to qualified immunity from suit because they acted in good faith and their conduct was objectively reasonable under the circumstances. To avoid summary judgment on the defendants' qualified immunity defense, a plaintiff must present evidence

15

to raise a fact issue "material to the resolution of the questions whether the defendants acted in an objectively reasonable manner in view of the existing law *and facts available to them*." *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (emphasis added).  If reasonable public officials could differ as to whether the defendant's actions were lawful, the defendant is entitled to immunity. *See Malley*, 475 U.S. at 341.  "Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable."  *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)).

Where qualified immunity is asserted, Pierce, as the plaintiff, has the burden to produce admissible evidence that raises a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them.  *See Michalik*, 422 F.3d at 262.  Pierce has filed a cross-motion for summary judgment in this instance, but his allegations do not overcome the defendants' assertion of qualified immunity.  As outlined above, there is no evidence that Pierce was denied care for his bone spur.  Likewise, the summary judgment record reflects that Pierce does not meet the criteria for a new lower partial plate or dentures under the TDCJ Dental Policy.  Pierce's unsupported allegation that he was denied adequate care does not raise a genuine issue of material fact on whether the defendants' actions were unreasonable under the circumstances and is not sufficient to overcome the defendants' assertion of

qualified immunity in this instance.  The Court concludes, therefore, that summary judgment on the defendants' assertion of qualified immunity is warranted.

### B.    Remaining Defendants

Pierce also sues TDCJ Director Nathaniel Quarterman, Warden Alfred Janicek, Jr., Assistant Warden Gary Wakefield, Captain Michael Burnett, Major S.M. Johnson, and Lieutenant Powell.   Pierce complains that these supervisory officials are responsible, in general, for overcrowding at the Ellis Unit and for insufficient opportunities to engage in recreational activities.  In particular, Pierce complains that he frequently has to wait in long lines to use the restroom at the chow hall and in the day rooms.  Pierce complains further that recreation is not always held three times every day as required and that he "never" gets to go outside for recreation "during the sunny part of the day[.]"   Pierce alleges that these overcrowded conditions are cruel and unusual in violation of the Eighth Amendment.

It is well settled that the United States Constitution does not require comfortable prisons.  *See Farmer*, 511 U.S. at 832; *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, it is equally well established that conditions of confinement "must not involve the wanton and unnecessary infliction of pain."  *Rhodes*, 452 U.S. at 347.  In that respect, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded "humane conditions of confinement," including adequate food, shelter, clothing, and medical care.  *Farmer*, 511 U.S. at 832.  To demonstrate that prison conditions violate the Eighth Amendment, an inmate must meet the following requirements:  (1) an objective requirement showing that the condition is "so serious as to 'deprive prisoners of

the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need;" and (2) a subjective requirement, which mandates a showing that prison officials have been "'deliberately indifferent' to inmate health or safety." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (citing *Farmer*, 511 U.S. at 834) (citations omitted).

Pierce, who seeks only injunctive relief in this case, does not establish that he is entitled to relief because his allegations fail to satisfy the objective criteria under the Eighth Amendment analysis. Under this criteria, "extreme deprivations are required to make out a conditions-of-confinement claim." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). Pierce does not allege that he has suffered an extreme deprivation of the "minimal civilized measure of life's necessities." *Davis*, 157 F.3d at 1005 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). Nor does he claim to have been completely denied a basic human need. *See Woods*, 51 F.3d at 581 (noting that, although the temperature was "uncomfortable" and the conditions were "nauseous," there was no complete "deprivation of facilities for elementary sanitation" giving rise to unconstitutional confinement); *cf. Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 2000) (concluding that complete deprivation of toilets denied a basic element of hygiene in violation of the Eighth Amendment, as did prolonged exposure to "extreme cold" out-of-doors without shelter).

Pierce fails to allege or show that he has been exposed to any condition so grave that it "violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Thus, Pierce's claim that the overcrowded

conditions of his confinement are cruel and unusual is without merit.  *See Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (holding that a prisoner's Eighth Amendment claim regarding certain restrictions imposed in administrative segregation was frivolous).

Moreover, Pierce fails to allege that the remaining defendants (Nathaniel Quarterman, Warden Alfred Janicek, Jr., Assistant Warden Gary Wakefield, Captain Michael Burnett, Major S.M. Johnson, and Lieutenant Powell) have the requisite personal involvement with the complained of conditions.  A supervisor may not be held liable for a civil rights violation under a theory of *respondeat superior* or vicarious liability.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003).  Supervisory officials can be held liable only if the plaintiff demonstrates either one of the following: (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation.  *See Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor."). Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Thompkins*, 828 F.2d at 304 (quotations omitted).

The pleadings do not provide specific facts outlining the personal involvement of Nathaniel Quarterman, Warden Alfred Janicek, Jr., Assistant Warden Gary Wakefield,

Captain Michael Burnett, Major S.M. Johnson, and Lieutenant Powell with the claims in this case. Personal involvement is an essential element of a civil rights cause of action, meaning that there must be an affirmative link between the injury and the defendant's conduct. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976)). In order to successfully plead a cause of action under 42 U.S.C. § 1983, which governs this case, a civil rights plaintiff must "enunciate a set of facts that illustrate the defendants' participation in the wrong alleged." *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986). Pierce fails to meet that burden here. Under these circumstances, Pierce cannot maintain a civil rights suit against the remaining defendants on a theory of supervisory liability. Accordingly, Pierce's claims concerning the overcrowded conditions of confinement are dismissed for failure to state a valid claim for which relief may be granted.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.   The defendants' motion for summary judgment (Doc. # 16) is **GRANTED**.

2.   The plaintiff's cross-motion for summary judgment (Doc. # 17) is **DENIED**.

3.   The complaint in this case is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Houston, Texas, on  August 14th, 2008.

Nancy F. Atlas
United States District Judge